## MORRISON *v.* KING, mayor, *et al.*

1. Under the authority conferred upon the mayor and general council of the City of Atlanta by the first section of the act of September 3d, 1881, amendatory of that city's charter (Acts 1880-81, p. 359), "to grade, pave, macadamize, and otherwise improve...the streets and public lanes and alleys of said city," the municipal authorities have the power to cause any such improvements as are embraced in the language herein quoted to be made and paid for out of the general fund of the city without a petition or request from abutting property owners. This power existed prior to the passage of the act of December 23, 1896, and was recognized and kept in force by that act.

2. Whenever, however, the municipal authorities shall undertake, under the provisions of the act first above mentioned, to have such improvements made and a portion of the cost assessed on the real estate abutting on the street improved, there must be compliance with such provisions.

Argued January 19,—Decided March 3, 1897.

Petition for injunction. Before Judge Smith. Fulton county. October 21, 1896.

*Harry A. Alexander,* for plaintiff.

*J. A. Anderson, George Westmoreland* and *Kontz & Conyers,* for defendants.

COBB, Justice.

The mayor and general council of the City of Atlanta have power under the charter of the city "to grade, pave, macadamize, and otherwise improve . . the streets, public lanes and alleys of said city." Acts 1880-81, p. 359. While the act which contains the power above quoted provides a way for paying for such improvements, it does not prescribe the only and exclusive method which the municipal authorities may adopt in providing payments for improvements of the character named. The first section of the act

from which the above quotation is taken is a general unrestricted grant of power to make street improvements of the character named. The remaining sections of this act which relate to the subject of street improvements simply provide a method of paying for such improvements by a system of local assessments, but do not in any of its terms require that such improvements shall be paid for in this manner only. The words "so improved," which are to be found in the first proviso of the third section, which requires that before any street or portion of a street shall be "so improved" the persons owning real estate having at least one third of the frontage on this street shall petition to the city authorities to make such improvements, do not, as was insisted upon in the argument here, relate to and limit the power to make the improvements of the character named in the first section, but limit the power of the municipal authorities to pay for them in the manner prescribed in this act. There are two methods provided in the charter of the city for paying for improvements of this kind. Under the general grants in the charter, which are found in the act establishing a new charter for the City of Atlanta (Acts 1874, p. 116), the municipal authorities can legally levy taxes for the purpose of improving the streets, and keeping the same in repair. Under the act of September 3, 1881, cited supra, the municipal authorities have power, under certain conditions, to pay for such improvements in part by local assessments. Whether a street improvement is necessary and proper is a question addressed to the sound discretion of the municipal authorities; and whether such improvement, when determined upon, shall be paid for by general taxation or by local assessment in the manner prescribed by the act of September 3, 1881, is a question likewise addressed to the sound discretion of the municipal authorities. The power to enforce payment for such improvements by the levy of a local assessment depends upon the will of a certain proportion of the property owners who own property fronting on the street to

be improved. Without this there can be no local assessment. If the requisite number of property owners fail to petition, and the necessity for improvement exists, the municipal authorities can resort to the general fund; and this is true even though no effort has been made to secure a local assessment; and this is also true where the improvement made consists of the repairing and relaying of a pavement which had been at first paid for in part by local assessment under the provision of the act above cited. The power to pay for street improvements out of the general fund clearly appears in the grants contained in the act of 1874, cited supra, and existed prior to the passage of the act of December 23, 1896, which provided that "the power and duty of the mayor and general council of said city to keep its streets, whether paved or unpaved, in repair, and to pay for such repairs out of the general fund of said city, is in no way affected" by the act of September 3, 1881. The act of December 23, 1896, was simply declaratory of the power already possessed by the city. To pay for street improvements out of the general fund requires simply the exercise of the discretion of the municipal authorities. To pay for street improvements by assessing the abutting property requires, not only the exercise of discretion by the municipal authorities as to the necessity and propriety of the work, but also the consent of a certain proportion of the abutting property owners. This being true, the court was right in refusing to enjoin the city from paying out of its general fund for the repaving of the street in question, the injunction being sought by a taxpayer who claimed that the repaving could not be lawfully done at all except in the manner prescribed in the act of September 3, 1881, viz: upon the petition of abutting property owners and partially at their expense, and then only when the requisite proportion of such owners applied for the improvement by local assessment. Even if the requisite number of abutting property owners were to apply for the improvement by local assessment, the council could still in

their discretion pay for the work out of the general fund, instead of proceeding with the local assessment. The duty rests upon the authorities of this city to keep its streets in a condition reasonably safe for travel, and the act of 1874 bestowed ample power to pay for all such work by taxation. It would, therefore, be unreasonable to hold that the act of 1881 left the city with its liability to pay damages for a failure to repair its streets completely at the mercy and subject to the caprice of abutting property owners on each street. *City of Greensboro* v. *McGibbony*, 93 *Ga.* 672.

    *Judgment affirmed. All the Justices concurring.*